# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 24-0526V

|  |  |
|---|---|
| GERALD SCHUCH, | Chief Special Master Corcoran |
| Petitioner, | Filed: May 18, 2026 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Jonathan P. Groth, Groth Law Firm, S.C., Wauwatosa, WI, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT**[1]

On April 8, 2024, Gerald Schuch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 4, 2022. Petition at 1.

The parties were unable to settle the claim (ECF No. 33), and therefore dispute Petitioner's entitlement to damages. Respondent contends that Petitioner cannot substantiate a Table SIRVA claim because his injury was not limited to the shoulder in

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

which the vaccine was administered. Respondent's Rule 4(c) Report, ECF No. 34, at *7. For the reasons set forth below, I find that the record preponderantly supports Petitioner on this element.

## I.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health*

& Human Servs., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.     Finding of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4(c) Report, and additional evidence filed.

Petitioner received a flu vaccine in his left deltoid on October 4, 2022. Ex. 2 at 1. Less than a month later (November 1, 2022), he messaged his primary care provider ("PCP") reporting left arm pain that radiated down to his hand and into the back of his shoulder. Ex. 3 at 1482. At a walk-in clinic the same day (November 1, 2022), he explained that his arm had hurt since vaccination. *Id*. at 1467. He described his pain as throbbing, making it hard to lift his arm, and he felt shooting pains down to his wrist. *Id*. at 1467.

On November 7, 2022, Petitioner contacted his PCP, stating that his left shoulder was a little better, but his arm remained sore down to his elbow. Ex. 3 at 1454. On November 9, 2022, Petitioner attended an occupational therapy evaluation, reporting worsening left shoulder pain and tingling that went into his entire left hand, and weakness in his left upper extremity. *Id*. at 1414. His pain ranged from three to seven out of ten. *Id*. He explained he had experienced *right* shoulder pain (and hence the non-vaccinated arm) and numbness since an injury a few years prior. *Id*.

When Petitioner saw an orthopedist on December 2, 2022, and January 6, 2023, he complained of bilateral shoulder pain. He explained that his right shoulder pain was chronic, but his left shoulder pain had started after the October 2022 vaccination. Ex. 3 at 1297, 1351. He did not mention related symptoms extending beyond his left shoulder, and rated his pain as reaching nine out of ten at times. *Id*. at 1351. Petitioner messaged his PCP on March 25, 2023, complaining of pain in both shoulders. *Id*. at 1081. He also complained of "more pain, numb areas are spreading up my neck and down my back and shoulder blade areas." *Id*.

Petitioner saw a pain management specialist on April 7, 2023, for bilateral shoulder pain. Ex. 3 at 990. In the record of this visit, his pain was noted as "bilateral shoulder, neck" – possibly suggesting that his shoulder pain on *both* sides was affecting his neck. *Id*. But the same record also refers to *right* sided neck numbness (*Id*.); and another record refers to neck pain on the right side only. *Id*. at 951.

Petitioner consulted a different orthopedist on June 22 and October 2, 2023 for bilateral shoulder pain, and did not report any related pain extending beyond his left shoulder.[3] Ex. 3 at 616-17; Ex. 5 at 2154. Petitioner underwent a physical therapy evaluation on January 16, 2024 after undergoing left shoulder surgery, and complained only of pain in his left shoulder, rating his pain as ranging from three to eight out of ten. Ex. 5 at 2159. The same is true of post-operative orthopedic appointments. Ex. 5 at 1495, 1630, 1722.

Petitioner's right shoulder pain was present prior to vaccination, and hence records concerning that are irrelevant for present purposes. But in challenging this element, Respondent relies on records of pain radiating down Petitioner's arm to his hand and the back of his shoulder.

Although Petitioner experienced pain *radiating* from his shoulder on numerous occasions and reported that to treaters, it is significant that his symptoms *originated* and primarily occurred in his vaccinated shoulder. *See Valdez v. Sec'y of Health & Human Servs*., No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original).

This record thus supports this element despite the references to pain elsewhere in the arm. While such non-shoulder issues are highly relevant to damages (and Petitioner should not expect to include them in any pain and suffering or unreimbursed expenses damages), they do not preponderate over the conclusion that the main thrust of Petitioner's complaints and treatment were focused upon his shoulder.

Petitioner is encouraged to promptly re-engage Respondent in settlement discussions in light of this finding. If these efforts are unsuccessful, briefing may be ordered if warranted.

---

[3] Petitioner did complain of left *knee* pain at this appointment, but did not associate this with his vaccine-related injury, instead explaining that he had fallen on his left knee in April. Ex. 3 at 616.

**Scheduling Order**

- **Petitioner shall file, by no later than <u>Friday, June 26, 2026</u>, a status report providing an update on the parties' discussions.**

- **Respondent shall file, by no later than <u>Friday, June 26, 2026</u>, a status report indicating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

    **IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

5